## Inhabitants of Paris *vs.* Norway Water Company.

### Oxford.   Opinion February 25, 1893.

*Tax.   Water Company.   Pipes.   R. S., c. 1, § 4, rule X; c. 6, §§ 3, 9;*
*43 Eliz. c. 2 ; 38 Geo. III.*

The water pipes, hydrants, and conduits of a water company, laid through the streets of a city or town, are taxable as real estate to the company in possession of them, under our statute, in the city or town where they are laid.

AGREED STATEMENT.

This was an action of debt brought in the name of the inhabitants of Paris for the collection of a tax assessed by the assessors of said town against the Norway Water Company, as nonresidents, on its property in the town of Paris, viz : on its aqueducts, pipes, conduits, hydrants and franchises within said town, as real estate.   The assessors of said town were duly elected and qualified at the annual meeting in March, 1890, duly called.   The assessors gave notice in writing as required by R. S., c. 6, § 92, and said corporation did not make or present any list to said assessors.   In the apportionment of taxes for state, county and town purposes for the year 1890, said assessors assessed against said corporation the sum of seventy-three dollars and fifty cents, and thereafterwards on the 8th day of July, 1890, committed the said tax with the other taxes assessed for that year to the collector, who was duly elected and qualified, under a warrant in due form of law.   Said collector duly and properly returned the tax so assessed against said corporation, within the time required, to the treasurer of said town, who was duly elected and qualified.   The acts and duties of said treasurer in receiving and recording said tax were in due form.   Demand for the payment of said tax was seasonably made before commencement of this suit.   The suit was properly authorized by the selectmen.   The defendant is a legally organized corporation, having its place of business at Norway, in the county of Oxford, and owning therein a pumping station, reservoir, and certain pipes and hydrants, with rights as defined by its charter to take water from Pennesseewassee Lake in

Norway. Its pipes and hydrants extend into Paris and through the village of South Paris, for the use of which water the said corporation are paid. Said corporation own no property in said town of Paris, except its aqueducts, conduits, pipes and hydrants as described in the assessment of said tax; and their pipes and hydrants in Paris are supplied from the pumping station and reservoir in Norway.

Upon the foregoing statement of facts and evidence introduced, the court were to render such judgment as the rights of the parties require; and if for plaintiff the amount due shall be assessed at *nisi prius* (as a petition for abatement before the county commissioners is now pending).

*J. S. Wright*, for plaintiffs.
*Bearce and Stearns*, for defendant.

HASKELL, J.    Debt for a tax laid upon defendant's aqueducts, conduits, pipes and hydrants, as real estate, within the town of Paris.    These appliances are used to distribute water among the citizens of Paris, supplied by a pumping station and reservoir in Norway, where the defendant corporation has its place of business.    By charter (acts of 1885, c. 369; 1887, c. 46), defendant is authorized to supply the inhabitants of Paris and Norway with water, and to lay pipes necessary for the purpose through the streets of both towns.    The charter does not locate the corporation in either town.

Taxes on real estate are to be assessed "in the town where the estate lies, to the owner or person in possession thereof;" R. S., c. 6, § 9; and real estate for the purposes of taxation, includes "all lands . . . and all buildings erected on or affixed to the same;" R. S., c. 6, § 3; and the word "lands" includes "all tenements and hereditaments connected therewith and all rights thereto and interests therein." R. S., c. 1, § 4, rule x.

Under these provisions, a boom across the Kennebec river, fastened to permanent piers in the river and to the shores by chains, was held to be real estate for the purposes of taxation, *Hall* v. *Benton*, 69 Maine, 346. So was that part within the State of a toll-bridge across a river that marks the boundary line.

*Kittery* v. *Portsmouth Bridge*, 78 Maine, 93. Water pipes were assessed *in solido* with personal property in *Rockland* v. *Water Co.* 82 Maine, 188, and, in a suit for the tax, it was contended that they were real estate and improperly included in an assessment with chattels; but the court, without deciding the question held it immaterial, as the controversy was one of overvaluation merely.

It will be seen from these authorities that the court gives very wide scope to the definition of real estate, for the purposes of taxation; and it is best that it should be so. Subjects of public revenue should contribute to the public burdens so that they may lie as equally as possible among all the people. And, in these days, when capital accumulates in commercial centres, many times representing contrivances, local and permanent in character, that contribute an income, it is just that such source of profit pay its tax where its location may be.

Aqueducts above or under ground are but conditions suited for carrying water, undefiled, through or over the soil. They are fixtures, permanent in character and part of the land that sustains them. Size, capacity, and the material used in their construction do not change their nature. They are a constituent part of the freehold, and so long as they remain the property of the owner of the fee, their character as real estate will not be questioned. It is only when they are constructed and occupied by persons or companies having no title in the soil, that their classification as property becomes doubtful, that is, the interest of such persons or companies in them, becomes of doubtful classification, rather than their generic character, regardless of ownership. The owner of a fee may, by sale of some structure upon it and by granting license for it to remain, as between himself and the vendee, make it a chattel, while as a whole, in a generic sense, it would be classified as real estate.

The proper classification, under the rules of the common law, of this species of property, is not a new question. It has been many times considered in England during the last century. And water-mains and underground conduits have there been considered as fixed to, included in, and a part of the soil. They

have been considered real estate, and have uniformly been held locally taxable as such to the "occupiers of lands," under the statute of 43 Eliz., or as our statute puts it, "to the person in possession thereof." *King* v. *Bath*, 14 East, 610; *King* v. *Rochdale Water Works*, 1 M. & S. 634; *King* v. *Gas Light & Coke Co.* 5 B. & C. 466.

Under the statute of 38 Geo. III, laying taxes upon the owners of "lands and hereditaments," the pipes of a water company in a street were held to be not taxable as land to the owners of them. Lord Campbell says: "The right in question, where exercised, appears to us to be in the nature of an easement, and neither land nor hereditament. The right is to convey water through the land of another; and whether the water is to be conveyed upon the surface of the ground, or in covered drains, or in pipes, appears to us for this purpose to be immaterial. The mere power to lay the pipes in land cannot be considered land or hereditaments; nor do we think that the pipes, when laid, can be so considered within the meaning of the land tax acts. . . . The company are not the owners of the land where the pipes lie; nor are they the tenants of the land. . . . The moment the company take up their pipes which had been laid under the streets of any particular parish, all pretense for saying that they have or held land in the parish would be gone; but, after the pipes are removed, all the land in the parish would remain, and it would be had and be held as before. . . . But 'land,' like the word 'inhabitant,' which likewise occurs in the 43 Eliz. c. 2, has various meanings; and it may, in that statute, passed to throw a charge upon the occupier, mean the ground on which a chattel is deposited in the exercise of an easement, although, in other acts of parliament, it means a legal interest in the soil. This is the meaning which we think it bears in the land tax acts." *Chelsea Water Works* v. *Bowley*, 17 Q. B. 358.

The city of Providence laid a tax on the pipes of the Gas Company in the streets, as real estate, under a statute authorizing such a tax against those "who hold or occupy the same," and it was held a valid tax like those laid under the statute of Elizabeth. *Providence Gas Co.* v. *Thurber*, 2 R. I. 15.

So a pipe line, laid through the soil of New Jersey, under grants from the owners of the fee, is not only real estate when considered as a part of the fee, but is held, for the purposes of taxation, to be real estate of the company owning it, under a statute defining real estate as including all lands and all buildings or erections thereon or affixed thereto. *Pipe Line* v. *Berry*, 52 N. J. L. (23 Vroom,) 308.

Gas mains and pipes are sometimes distinguished from the class of property now under consideration, as apparatus for the delivery of the manufactured article, and are considered machines or chattels. *Commonwealth* v. *Lowell Gas Light Co.* 12 Allen, 75; *Memphis Gas Light Co.* v. *State*, 6 Cold. 310. Water pipes, &c., are not machinery. *Dudley* v. *Jamaica Pond Aqueduct Corporation*, 100 Mass. 183.

The public has an easement in land, over which streets and roads are laid, co-extensive with the necessities of public use. No title in the soil is acquired thereby, and when the ways are discontinued the easement is extinguished. Private corporations, like gas companies, water companies and street railway companies, by legislative authority, are sometimes allowed the use of the public easement to serve the necessary demands of society, and without any additional compensation to the owner of the soil. Such companies, therefore, by the public license accorded them, take no title in the land. They are simply allowed to use it for the public convenience as a counterbalancing consideration for their expenditures, giving opportunities to gather tolls from its use. In using the street or road, they place their pipes or rails in or upon the ground there permanently to remain. They occupy land with appliances that become valuable for the revenue they yield. These appliances are fixed, permanent, used in connection with the soil that supports and sustains them. When considered as the property of their respective companies, they are not land within the common law rule. But when considered as if owned by the same person who has title to the soil, they may properly enough be so considered. Suppose the street with these appliances in it be discontinued and they be abandoned without removal and pass

to the owner of the soil, who should then lease them in gross or singly to tenants or persons desiring to operate them. Would they not be real estate when considered with the property as a whole? Would they not pass by a deed of the land? Why then may they not properly enough be assessed as real estate, and to the person in possession of them? Their value as chattels would be nominal. Water pipes buried in the ground as chattels would be of little or no value. It is the use that gives them value, and that use is strictly of a fixture, a permanent appliance. As bearing upon this view, see *Flax Pond Water Co.* v. *Lynn*, 147 Mass. 31; *City of Fall River* v. *Bristol*, 125 Mass. 567; The *People* v. *Cassidy*, 46 N. Y. 46.

In the last case cited, in considering the validity of a tax upon a street railway as land under a statute very similar to ours, Folger, J., said: "The statute means, for its purpose, to make two general divisions of property; one, all lands, another, all personal estates; and then, to be more definite, it declares, that by land, is meant the earth itself, and also all buildings and all other articles erected upon or affixed to the same. We do not think that, when buildings or other articles are erected upon or affixed to the earth, they are not in the view of the statute land unless held and owned in connection with the ownership of a fee in the soil. We are of the opinion, that the statute means that such an interest in real estate, as will protect the erection, or affixing thereon, and the possession of buildings and fixtures, which will bring those buildings and fixtures, within the term "land," and hold them to assessment, as the lands, of whomsoever has that interest in the real estate, and owns and possesses the buildings and fixtures. The defendants are right, then, in considering the track of the relators as land, and liable to assessment as such."

In our opinion water-mains, pipes, &c., may be considered real estate and taxable where they are located, to the person or company owning them. The idea that they may be considered appurtenances to the place of supply and taxable there is untenable. There is no principle upon which it can rest. *King* v. *Bath* and *King* v. *Brighton*, 5 B. & C. 466. See *Boston*

*Manuf'g Co.* v. *Newton,* 22 Pick. 22. The Iowa doctrine that water works are real estate and taxable as an entirety at the place of supply is not supported by authority. *Askaloosa Water Co.* v. *Board of Equalization,* (Iowa,) 51 N. W. R. 18.

*Defendant defaulted.*

PETERS, C. J., WALTON, LIBBEY and FOSTER, JJ., concurred.